Construction Co, LLC v. Travelers Construction Co, LLC v. Travelers Mr. Collins, excuse me. Good morning Your Honors. Bill Collins, on behalf of Bing Carney, Tonya Carney, Charles Carney III, Ryan Carney, and Clayton Carney. And everyone other than Mr. Carney and Bing Carney, we're considering the interested parties. As you know, this case, this appeal involves kind of two separate issues. They both stem from the same root of garnishment, but we have the interested parties, everybody except for Mr. Bing Carney, arguing that their shares, their joint tenancy accounts with the right survivor ships, that their shares were improperly allowed to be garnished by travelers. And then we have a separate IRA account that Mr. Carney is arguing. So I'm going to start on the interested parties argument regarding the non-IRA account. As Your Honors are aware, there are six accounts at issue for the interested parties. The first account, the largest account that ends in 0056, was worth $625,000. And Mr. Carney and his wife, Mrs. Tonya Carney, argued at court and argued in separate proceedings that those funds were always held tenants by the entireties. And in the same report and recommendation that we're appealing today, the Judge McCown, the magistrate judge sitting here, found that Tonya Carney and Bing Carney were collaterally stopped from arguing the TBE issue in his court because it had been resolved by Judge Kavakovich in a separate case. That was appealed recently and a ruling has come down. So Mrs. Carney, Tonya Carney, has at all times argued that she owned those funds actually 100% as a TBE account holder, but now obviously that's been found against her, so she's making the argument that she has all the rights of a joint account with a joint tenant account with right of survivorship holding. And I think it's important to go back to what was in front of Judge McCown when this summary judgment motion was being argued. At the time, the interested parties filed motions to dissolve the writ and they filed a summary judgment motion as well. And the argument by the interested parties was that Mr. Carney had no interest in those accounts, that he was a mere convenient signer and he said he had no interest, not even his joint tenancy with right of survivorship interest. So in front of Judge McCown on summary judgment, Traveler's argument was no, Mr. Carney does have an interest and they presented some former testimony, deposition transcripts from the Regions case showing that he had mentioned these accounts before. So at no time did Travelers make the argument that the other account holders, the interested parties, did not have their share of the accounts. They were trying to just approve that Mr. Carney did indeed have an ownership share in those accounts. The problem is though, you are the one that had to make that argument and you are the one who argued only that the entirety of the accounts belonged to Bing Kearney. And the garnishment, as I understand it, is the issues are set by the motion to dissolve and your motion to dissolve for the interested parties argued only that Bing Kearney had no interest. You're exactly right, Your Honor. Therefore, why are you not barred by our general rule that you can't bring up an argument after the district court ruled? You didn't bring this argument up until after the district court adopted the magistrate judge. No, no, you're exactly right, Your Honor. We lost. Judge McCown found Mr. Carney does have ownership interest in these accounts and he found that they were joint tenancy accounts with the right of survivorship. Nowhere did Travelers argue or did Judge McCown find that Tonya Kearney, Chase Kearney, Charles Kearney III, Clayton Kearney or Brian Kearney had no interest in those accounts. And the presumption under Florida law is if you're a named account holder on a joint tenancy account with right of survivorship, you are presumed... The problem with your argument is that you were trying to dissolve the garnishment. You made no argument about the proportional ownership in that. If you had, the insurance company could have come forward with evidence as to what the ownership was and there's incidentally considerable evidence that Bing Kearney controlled and probably owned most of it, if not all of it. But you didn't put the insurance company to the test. Discovery and trial on the garnishment issue was based on the sole issue that Bing Kearney owned no part of it at all. Well, Your Honor, I think you're flipping the burden improperly. I don't think the burden is on the interest of parties to show that they have their pro rata share because they're a named party to that account. The burden is on travelers to come in and say, despite the fact that a third party is named on that account, they don't have an actual interest in that account. In fact, Mr. Kearney is in exclusive control of that account. That argument was not made. That argument was not adopted by Judge McCown. What Judge McCown finds, he says, look, Mr. Kearney and the interested parties try to say that Mr. Kearney has no interest in these accounts. I don't buy that. He does have an interest in these accounts. Judge McCown finds all the accounts are joint tenancy accounts with rights of survivorship. Judge McCown does a beautiful citation of Beale Bank, the Conrad case, everything else that lays out how Florida treats a joint tenancy account with right of survivorship. It is presumed that the account holders have their interest, and it's presumed that they're entitled to their pro rata share. It is up to the outside creditor, as this court found in the Dorman case, to come in and disprove that presumption, overcome that presumption. Travelers never did that here. Totally agree with you, Your Honor. Judge McCown and travelers proved that they did not even attempt. Why did you not argue in the alternative? And if he does not own it all, still, you can garnish only a part of it, namely his part and not the part contributed by Tonya and the others. Why did you not argue that? Well, that's exactly what Judge McCown found. That's what's perplexing about... You didn't answer my question. Why did you not argue that? Well, why didn't we argue that we have a presumption that they have to overcome? Well, they didn't even attempt to make the argument. You are the one has the burden there. Motion to dissolve and to show that there is an exemption from creditors is on you under Kane, K-A-N-E. I think, Your Honor, the presumption is you have your entitlement. The interest of parties were arguing is that Mr. Carney doesn't have any interest. We've got 100% because he was a convenience signer. We lost. We lost that argument. But there's still the... And therefore, you lost the motion to dissolve. And we lost on a motion for summary judgment that we argued exactly the same thing. And therefore, why should we not affirm? Because I don't think it was our argument to make, Your Honor. I think it was travelers' argument to make that we didn't even have the presumption under Florida law that we at least had our pro rata share of the account. Section 70.01 or 2, whatever it is, says that you have to file a motion to dissolve if you want to challenge the garnishment. You have to file a motion to dissolve. And your issues set the issues for the trial. That's what happened. Those issues were decided against you. Therefore, it seems to me the garnishment goes through. Maybe you can sue them in some other case. Well, first of all, this is on summary judgment to begin with. And second of all, Your Honor, I disagree with the way you're interpreting that case. We filed a motion to dissolve. We filed a motion for summary judgment saying Mr. Carney wasn't an owner. We never... As far as we're concerned, Your Honor, I guess people were speaking past each other. We never had any reason to think our pro rata interests were under attack. Nobody ever said we think we're entitled to take that entire fund. The Mr. Carney have any ownership of that fund. That's what was in front of Judge McCown. It wasn't are we entitled to the presumption under Florida law that we have our pro rata interest in those funds. That was never raised in the pleadings. That was never raised anywhere. That's why when Judge McCown came out with his report and recommendation that was adopted, the interested parties filed their motions to release the funds due to him. Because Judge McCown found their joint tenancy accounts with the right of survivorship. He said all the law that is presumed to be equal, presumed to be pro rata, and he said no party overcame that presumption. So the presumption under Florida law is that the interested parties own their share. They don't own 100% of it. We agree with that. Judge McCown found no. Bing Carney does have ownership and control of some of these accounts and some of these with the right of survivorship. Judge McCown found he was a joint tenant with the right of survivorship. Logically following that the interested parties are still there, still have a joint right, a joint tenancy with the right of survivorship. And that means they're entitled to their pro rata share. Was there any discussion at all about the effect of finding a joint tenancy with the right of survivorship? Or did you simply assume that all the presumptions were in place? Exactly. I think the argument, and not to repeat myself, the argument at the time, the argument in front of Judge McCown was simply does Bing Carney have an ownership interest in these accounts? And if he did have an ownership interest in the accounts, it would presumably be a joint tenancy with the right of survivorship. I've got a question on the IRA issue before your time runs out. Are you aware of the In Are you familiar with the case that this court published a few months ago called In Re Yerian? You know, I have looked at it, yes. It is talking about what a final determination is as far as whether an IRA account is. Right, well, it addresses the statute that protects IRAs from creditors. So I'm wondering if you could address how that case impacts the arguments that you're making. You know, Your Honor, I apologize. I'm not that skilled on Yerian. I can come back. I looked at it for a very narrow issue. I think the issue with the IRA case is intent for a pledge, a security agreement, intent is one of the underlying issues. Did you intend to pledge this asset, this asset, this asset? And with retirement funds, exempt funds, the law is it should be liberally construed in Florida to protect people's retirement funds so they don't become a charge of the state. And then furthermore, when a third party to the contract attacks the contract, the parole evidence rule doesn't apply. You can't say to two parties to the contract because a third party's coming in, oh no, the contract's clear on its face. Intent is always available to show what the contracting parties mean. Let me interrupt you since you don't have time. First, do you think that it's your burden or the opposing party's burden to establish the exemption under the IRA statute that we're under? The exemption, I believe, is presumed. So I think it's the creditor's burden to overcome that exemption. And I think it's interesting the Sopkin case, you know, the IRS was actually brought into that case and the IRS was under the belief that they did not pledge it. And that's where the court found, well, they specifically pledged these shares out of their IRA. So we're going to hold they specifically pledged those shares, but we're not going to give you everything else. So I might be confusing my Inouye Roberts case with my Inouye Sopkin case, but the courts have said that at least what we've briefed, it's supposed to be a specific pledge. And to the extent there's anything unclear, I don't think it's proper, especially not on summary judgment, to foreclose out the argument of what the intent of the parties was. Well, the district judge or the magistrate judge rejected your evidence, your affidavit and the affidavit of, I forget the name of the fellow who was running. Yes, he struck the affidavit of James Reed who was on Moose. The cause of they took exactly the opposite. Both you and Reed took exactly the opposite position when they were trying to establish the superiority of the Moose lend. That's what happens, Your Honor, like with so many moving parts here. Parties had taken positions otherwise, trying to protect their positions in case things got unraveled here. I don't think that's a fair characterization of Mr. Reed's affidavit. I think his original affidavit was like, well, we don't believe those funds are garnishable, but if they are, then we have a priority interest over travelers. That's what Mr. Reed was saying in the affidavit that Judge McCown found was in conflict with the other one. I think that was a pretty unfair reading of those affidavits and wasn't the intent behind them. No creditor wanted to be denied something that another creditor might get. So every creditor was saying, well, to the extent travelers can garnish that, then we should get it first because we have a superior interest. So I think everybody was hedging with all these moving parts. So I think that was pretty unfair by Judge McCown to strike Mr. Reed's affidavit. But still, Mr. Carney's affidavit where he said it was strictly not the intent. But he discounted it for the same reason precisely. Well, yeah, but at the end of the day, Your Honor, I don't see how intent in this situation cannot be of importance, especially on a summary judgment standard when you have one contracting party against a third party trying to explain what the intent behind the agreement was, especially when it's a boilerplate agreement that doesn't have any reference to an IRA. I see I'm way over time, Your Honor, so I appreciate your indulgence. We'll give you your full time. Good morning, Your Honors. My name is Ali Adams. I represent Travelers Casualty Insurity Company of America. Judge Anderson makes an interesting point in his questions. Kearney and the interested parties throughout this protracted litigation and protracted efforts by travelers to attempt to recover money on what was a consent judgment, by the way, from Mr. Kearney, they change positions constantly. If they don't win on one argument, they change to another argument. If they don't win on this one, they change to another one, leading to seriatim litigation and the changing of factual positions. Yes, we as lawyers can make legal arguments in the alternative, but the facts are the facts are the facts, and it's either the truth or it's not the truth. You don't get to have one affidavit one day that says it's mine when it's convenient and another affidavit another day that says, oh, no, I didn't mean that because I lost on the it's mine argument. This is the fourth appeal arising out of this matter to come to the court. It's the third one you'll actually decide because Kearney dismissed one of the four appeals. Judge Pryor actually sat on the panel that issued the opinion finding that the account, the 056 account, the largest account, was not TBE. On a claim for exemption, I'll start with the interested party joint account, your honors. On a claim of exemption, it is the burden, clearly under Florida law, on the party claiming the exemption to detail the basis for the exemption and to prove the exemption. It is not the burden of the garnisher to do that, and the simple fact is if the interested parties had not filed the motion to dissolve in a claim of exemption, then travelers' garnishment would have been found valid. They don't file that motion to dissolve within 20 days. I get judgment on my garnishment as a matter of law, and U.S. AmeriBank hands the funds over to my client. So it is their burden. It's not my burden to prove I'm entitled to it. It's my burden to go garnish it, and it's their burden under Florida law to say I'm not entitled to it. They made a strategic decision in the court below to argue that Mr. Carney had zero interest in the funds so that all of the funds could be placed in the hands of his relatives. And mind you, these are not third-party disinterested people. These are his relatives, who he's used again and again to try to avoid this judgment. In the appeal on the fraudulent transfer action, the FTVB appeal that your honors affirmed, your honors recognized that he had used his son as basically a straw man to put in place a company to purchase a judgment to try to block travelers. And y'all affirmed the district court overruling and overturning that whole transaction. So this isn't the first time that Mr. Carney has used his relatives to appendix tab 28 and in our supplemental appendix as well, because the original appendix did not have all of our exhibits to DE 628, but detailed evidence that we had that the funds in the account were Mr. Carney's. In the big 056 account, the IRS refund check was for a 2006 tax refund, even though it wasn't paid until 2009. It was for 2006 before he was even married. He wasn't married until 2009. On the other accounts, we showed substantial activity, him using one account to write a $500,000 check to pay taxes with. So these aren't small amounts. This is substantial use of these accounts. I don't know how you can say he doesn't own at least 50% of an account, or more than 50%, or actually control the entire account if he's writing $500,000 checks from these accounts. But to Judge Anderson's point, we did put on this evidence, but to Judge Anderson's point, the issue was never raised that there was a 50% interest held by the interested parties. He makes the point, and I think he's correct on this, that with respect to if you didn't have this garnishment framework and you were just dealing with a joint account, there is that presumption. And probably you and not he would have that burden. Is that not true? Yes, sir. I agree with you 100% if it was not a garnishment. But there's a separate procedure and a separate burden on a garnishment. And the Florida legislature has chosen to put in place, it's a very specific and detailed procedure for sending out notices of the garnishment, for filing exemptions, for filing motions to dissolve, for having hearings. Very, very detailed procedure. And that detailed procedure means something. And part of that detailed procedure is that you bring all your arguments at once. And that you put the garnisher, me, who doesn't know what exemptions they're claiming, on notice of what exemptions they're claiming so we know what to try so we don't end up here where they want seriatim trials again and again and some finality. At some point it needs to be, you were supposed to and the statute clearly says you're supposed to bring all of your arguments in this motion to dissolve within 20 days of the notice of the garnishment and you didn't do it. And they've had ample time to do it. And what they really want is to go back and have another trial where we have already put in significant evidence in the record that these funds were actually, substantially at least, Mr. Carney's, to go try it again and come here again. This case has already been going on since 2009. We've had the judgment since 2011. And this is our fourth appeal because of these seriatim arguments. And again, the purpose of the, I think, the garnishment statutes is to have a quick determination on the validity of the garnishment and finality. They chose not to raise the issue. That's really on them. If I could, your honors, turn to the IRA account. I think one thing's very critical on the IRA account that distinguishes this from your normal guy who walks into a bank, takes out a loan, signs a blank at UCC, probably doesn't read it, in that in this particular instance, Mr. Carney provided a UCC to his son's company, a company that this court has already found that he used to conduct a different fraudulent transaction by trying to create security interests and assignments and priorities that did not exist to put his relatives, really him, ahead of travelers. In fact, Moose is controlled by James Reed, who was always Mr. Carney's and to my knowledge, Mr. Carney's right-hand man. Helps him run the construction companies and provides business. And he was a former attorney. I know he doesn't provide legal assistance anymore, but he was a former attorney. So they set up these transactions and they issued a broad UCC to Moose. And when it served Mr. Carney's interests to argue that, hey, I pledged everything to Moose. Travelers, your garnishment, you get nothing because it all went to Moose. That's what he argued. He had Mr. Reed sign an affidavit and Mr. Reed's affidavit, which is at DE-598, in the record, contrary to what counsel said, his affidavit doesn't say that the UCC does not cover the IRA. Nowhere does it say the UCC does not cover the IRA. It quotes the broad, broad language of the UCC and then says, by virtue of the fact that Moose Investments UCC1 was filed with the Florida Secure Transaction Registry on August 6th, 2012, Moose Investments UCC is a superior security agreement and means a priority position to that of Travelers' second writ of garnishment to you at Samara Bank. He goes on to say, based on the priority position of Moose writ of garnishment to U.S. Samara Bank, Moose Investments claims entitlement to the garnished funds subject to Travelers' second writ of garnishment, which included the IRA. Clearly, in U.S. Samara Bank's answer, it identified the IRA account and identified it as an IRA account. So Moose is clearly, unconditionally, through Bing Kearney's right-hand man, claiming that Moose had an assignment. Bing Kearney claimed that Moose had an assignment of the IRA that had priority over Travelers. Only when they realized that the UCC did not have priority over Travelers did they suddenly claim, oh no, we never intended for the UCC to cover the IRA. The district court doesn't need to have a trial and listen to them give two stories in order to make a determination that they've already admitted that the UCC covered the IRA. When parties, I mean there's clear case law from this court as well, when parties have conflicting testimony and affidavits, it can be disregarded. There was no reason to have a trial on intent. They'd already admitted their true intent. And the judge had a right, the magistrate had a right in reviewing the summary judgment and motion to dissolve pleadings to make that determination that it was intended to cover the IRA without a trial based on prior judicial admissions, sworn testimony filed into the record. Also, on the IRA, if your honors were to happen to find that there was some issue of fact that couldn't be resolved on summary judgment, of course it would go back on remand. Also, we have an argument that was brief that Kearney did not timely roll over the IRA. The district court found that there was issues of fact on this. So again, that would go back for an additional trial and evidentiary hearing. Are you familiar with the N. Ray Yerian case that I mentioned to prison counsel? I am not, your honor. I apologize. Is there anything else I can answer? I'm very sorry, did it come out after we briefed all this? Probably. I think we briefed this over a year ago. It's 927 F. 3rd 1223. We will be sure to read it. Did your honors have any further questions? Thank you. Thank you, your honors. Going back to the interested parties case, I guess, again, I'll be repeating myself. Both Tanya Kearney from day one claimed those were TBE funds. The interested parties, other than Tanya Kearney, claimed they owned 100% of the funds. Judge McCown had a hearing on that. Judge McCown found that no, you don't own 100% of the funds. Then he writes a report and recommendation where he says the accounts are joint tenancy accounts with the right of survivorship, presumed to be equal and a creditor can garnish that debtor's pro rata share. Nowhere does Judge McCown say anything else. Nowhere does he say, not only do the interested parties not own 100%, they own 0%. Travelers- The objections to the magistrate's report, why didn't you make the argument to the district court? You didn't make your argument about proportionate share after the objections to the magistrate's report, after the district court adopted? We didn't have to make that argument, Your Honor. That's what Judge McCown said. The effect was the garnishment is valid. The garnishment may be enforced. That's the effect of that. Against Mr. Kearney's? It didn't say that. Well, I don't think it says the opposite. That's the law. That's the law. What's the law, Your Honor? 77-07 says that if you want to challenge a garnishment, you have to make your arguments in your motion to dissolve. And they made that argument, Your Honor. They made the argument, they had 100%. They did not make the proportional argument. That's Florida law. That's not their argument to make. That's presumed, unless someone else comes and wipes that presumption away. And then Judge McCown, in his report and recommendation... Let me tell you the effect of that, the effect of your not making that argument is that the other side did not have to prove how much of it was Bing Kearney's. If you'd made that argument, then the burden of proof would have been on, but you didn't put it at issue. And the Florida law says that the garnishment is tried on the issues that you raise in the motion to dissolve. I guess my question would be then, what was Judge McCown writing? Because when I read that, he finds that those accounts are joint tenancy accounts with the right of survivorship, with the presumption that you can garnish the pro rata share. And at that point, you should have said to the district court, okay, we need to go back to the magistrate and have an evidentiary hearing on how much of that is Bing Kearney's and how much belongs to my clients. I disagree, Your Honor. I don't think it was our burden, and we filed a motion to release the funds based upon Judge McCown's own order. I understand your argument. How do we know what proportion of the funds, in your view, should be garnished? It should be the proportional share, the way Florida law runs it out, that the parties are presumed to have their pro rata share unless the creditor proves otherwise. So if there are three people on the account, they each own 33%. If there are two people on the account, they each own 50% under Florida law, unless there's proof otherwise. And Judge McCown says that in his report and recommendation, and Travelers never appealed it, never challenged it. I don't think it was our burden to presume that Judge McCown didn't know what he was writing. I think that was Travelers' burden. Thank you, Your Honors. Oh, and Your Honor, I see I have one more minute. Am I over a minute? Oh, I'm sorry.